James C. O’Brien, J.
Plaintiff, hereinafter designated “ Wife ”, and defendant, hereinafter designated “ Husband ”, were married in New York State in the year 1930, and lived together in the city of Rochester, New York, until about May 1, 1954, at which time they separated. On or about December 16, 1954, the husband secured a decree of divorce in the district of Bravos, State of Chihuahua, Republic of Mexico. Some time after the divorce and before the commencement of this action he remarried and is presently cohabiting with the new wife whose name is “ Eileen ”. The wife seeks a decree, declaring the Mexican divorce to be invalid and granting her a divorce on the ground that the cohabitation between husband and his new spouse, Eileen, constitutes adultery.
The husband was physically present in Mexico at the time the divorce was granted. He makes no claim that he was domiciled there. As a matter of fact he went every day from El Paso in *1051 Texas, across the border to Juarez, where the divorce was granted, and returned each night to El Paso to sleep. The wife was not physically present in Mexico. We all agree that if she did not subject herself to the jurisdiction of the Mexican court the resulting decree is not binding on her. (Querze v. Querze, 290 N. Y. 13; Caldwell v. Caldwell, 298 N. Y. 146; Matter of Rathscheck, 300 N. Y. 346; May v. May, 251 App. Div. 63.) If on the other hand she did subject herself to the jurisdiction of that court, the resulting decree is binding on her and is not subject to her present attack. (Leviton v. Leviton, 6 N. Y. S. 2d 535, mod. and affd. 254 App. Div. 670; Matter of Fleischer, 192 Misc. 777; Caswell v. Caswell, 111 N. Y. S. 2d 875, affd. 280 App. Div. 969; La Barr v. La Barr, 282 App. Div. 583.)
An attorney practicing in Mexico entered a formal appearance on behalf of the wife, here plaintiff, who was the defendant in the Mexican suit, as “ substitute counsellor ”. If such appearance was not authorized, the court had no jurisdiction and the resulting judgment is void. (Amusement Securities Corp. v. Academy Pictures Distributing Corp., 251 App. Div. 227; Deutsch v. Hoge Brush Co., 266 App. Div. 116.) The husband claims that this constituted an authorized appearance in the action by the wife and precludes her from questioning the validity of the decree.
We consider the merits of his claim. As has been stated, the parties separated about the 1st of May, 1954. On the 24th day of the same month they entered into a separation agreement. The wife admits that before she signed the agreement there was considerable negotiation between her and her husband and that she had been advised in the matter by her attorney. Paragraph “ 16 ” of the agreement provides as follows: “16. Each party agrees that in the event of the other party instituting an action for divorce in a court outside of the State of New York, he or she will appear by counsel in said action so as to confer jurisdiction on the said court upon the person of the defendant and to defend the same. In the event the defendant in said action fails to retain counsel for the purpose of appearing therein and defending the same, then the plaintiff therein is hereby empowered to retain counsel for the defendant for such purpose.” Pursuant to the arrangement agreed upon, the husband submitted to the wife a document to be signed by her in two places, above the legend “ Defendant’s Signature ”. The line for the first of these proposed signatures appears below a statement addressed to the Judge of the Civil Court in the Bravos district in the city of Juarez, and consists, among other things, of a waiver of the service of a summons upon the *1052 defendant (wife) and a submission by her to the jurisdiction of the Mexican court. The second statement which she was requested to sign is entitled ‘ ‘ Power of Attorney ’ ’ and among other things, authorizes such attorney as may be therein named, to appear for her and ratify and consent to the complaint or to answer and interpose any legal exceptions. The wife declined to sign either part of this document. Thereupon the husband proceeded to Mexico, retained an attorney in his own behalf and such attorney in turn ‘ ‘ retained ’ ’ another attorney, allegedly to act on behalf of the wife, defendant in the Mexican action.
As will be seen, this power to the husband is invalid if it is in effect an agreement to dissolve the marriage. The husband says it is not such; that it authorizes him to retain counsel for the wife, not to dissolve the marriage but ‘ ‘ to defend ’ ’ the action. If we assume, as the husband asks, that the foreign divorce action was to be a genuine adversary proceeding, then the appointment to be made by the husband (agent for the wife under the power claimed) would be an attorney to represent his principal (the wife) in a matter in which his (the agent’s) interests are directly adverse to those of his principal. It is doubtful if any court would approve as bona fide and consistent with our fundamental ideas of justice, an appointment made under such circumstances.
Looking again at paragraph 16, we note that it requires each of the parties to retain counsel in any subsequently commenced divorce action and concludes with a statement that in the event that the defendant in any divorce action should fail to retain counsel “ for the purpose of appearing therein and defending the same ” then the plaintiff in such action is empowered to “ retain counsel for the defendant for such purposes.” This is the power under which the husband acted. The last phrase (italicized) marks the limit of his authority. “ £ Retainer ’ has been defined as * * * the securing of an attorney at law to perform professional services in the business of another, in such manner that he cannot engage himself to, or perform any service in the employment in the interest of, the opposing party, or in any manner do anything in the business prejudicial to the party employing him.” (7 C. J. S., Attorney and Client, § 61.)
The authority of the husband under this so-called power of attorney in the separation agreement permitted him at most to retain an attorney for the wife, to engage himself in her interest only and in no way assist the opposing party in any way which would prejudice the rights of the client in whose behalf he was retained. An examination of Exhibit 2, which is *1053 a transcript of the record of the Mexican divorce proceeding (p. 4 of the English translation) shows that the counsellor who allegedly represented the wife in the suit, admitted the truth of the charges alleged in the complaint and prayed that judgment he rendered against his “ client ” as requested in the petition. Although the authority of an attorney to represent a nonresident should be clear and direct (Brewer v. Brewer, 24 N. Y. S. 2d 6) in this instance the client never knew the name of her attorney. Generally the written authority should disclose the name of the attorney or agent (2 C. J. S., Agency, § 27, p. 1057). Here the wife had no actual knowledge that a suit was in progress. Moreover the attorney supposedly representing Mrs. MacPherson did not communicate with her to ascertain her wishes in regard to the divorce action nor to ask whether or not she had any defense to the complaint or petition which he should interpose on her behalf. While the husband now argues that the wife was free to interpose a defense if she chose to do so, for her to do so would be somewhat difficult when she had no communication with the Mexican attorney. This attorney appears to have taken the position that by paragraph 16 of the separation agreement, the wife had irrevocably consented that the husband could obtain a divorce if he wished and that it was never contemplated that the wife would interpose any defense. We are impelled to conclude that the husband in fact never did retain an attorney for Mrs. MacPherson in the divorce action “ to appear therein and defend the same ” but in truth the attorney who was retained by him was retained for and in the interests of the plaintiff in the suit, viz.: Mr. MacPherson, to confess judgment and to expedite the entry of a decree dissolving the marriage and was not retained to and did not represent the wife. In connection with a possible defense of the action it should be noted that by another paragraph of the separation agreement, it is provided that beginning with October 15, 1954, “ and so long as the parties remain husband and wife, the husband will pay to the wife the sum of Twenty-five Dollars ($25.00) per week for her full support and maintenance.” Accordingly the wife had a financial incentive to defend the divorce action.
From a consideration of all the circumstances in the case, including the practical construction put upon the agreement by the parties, themselves, as evidenced by their conduct, I come to the conclusion that the understanding and agreement between them, as represented by paragraph 16, was that if either should desire to dissolve the marriage by a foreign judgment, the other party would assist the plaintiff in such action in every way *1054 practicable, including a formal appearance in the action. I do not believe that it was ever contemplated or intended by either of them that a defense to any such action would ever be made. This, I believe, is the only reasonable conclusion possible from the circumstances of this case. If our conclusion is correct that this was in fact the agreement between the husband and wife, it runs afoul of the clause in section 51 of the Domestic Relations Law which forbids a husband and wife to contract ‘ ‘ to alter or dissolve the marriage
The husband contends that this statutory provision is not applicable to paragraph 16 by reason of the fact that the counsel to be retained for the defendant in the foreign divorce suit was to be retained “ for the purpose of appearing therein and defending the same ”, and since the agreement contemplated that the defendant in the foreign divorce action should defend the suit, there is no violation of section 51. We have already seen that the attorney “ retained ” by the husband was not retained to defend the suit but to confess judgment; that such attorney did not consult the wife, did not ascertain whether or not she wished to interpose a defense and certainly made no attempt to ‘ ‘ defend ’ ’ the action on her behalf nor did the husband expect or retain him to do so. If we take the position, as the husband requests, that the husband did have authority, then we must conclude that his authority was limited to retaining, in good faith, a lawyer for the purpose of actually representing the wife. In such case the husband had no authority to do what he did in the Mexican divorce action. If on the other hand we should conclude, as we do, that the real intent and agreement of the parties, as evidenced by paragraph 16, was that each party would give to the other carte blanche to secure a divorce at any time he or she wished, then such agreement is in contravention of section 51 of the Domestic Relations Law. (Schley v. Andrews, 225 N. Y. 110; Murthey v. Murthey, 287 N. Y. 740; Harris v. Harris, 287 N. Y. 444; Gould v. Gould, 261 App. Div. 733.)
The two cases cited by counsel for the defendant are distinguishable. In Gershman v. Lafayette Nat. Bank (178 Misc. 693) the wife actually had signed a form of power of attorney which was annexed to the executed separation agreement. Also the action was one in contract for sums due to the wife under the separation agreement. As a defense the husband asserted that the agreement to sign the power of attorney made the whole contract void. There was no attempt, so far as appears, to secure a divorce under the power of attorney. Kaufman v. Kaufman (62 N. Y. S. 2d 472) was an action in which the wife *1055 sued the husband for weekly installments due for support under a separation contract. The alleged illegality which the husband set up as a defense consisted of an additional promise by the husband to pay the wife $150 as a counsel fee in a divorce action which she agreed to and apparently never did commence. Neither of these cases is comparable to ours. No case has been cited, nor have we, ourselves, discovered one in which a divorce decree granted by the court of a foreign nation has been held binding upon a New York State domiciliary under circumstances like those in our case.
As a result of the foregoing I have come to the conclusion that the appearance by the attorney in Mexico was not an appearance which the wife authorized and that Mrs. MaePherson, plaintiff in the action before us, never submitted herself to the jurisdiction of the Mexican court. Therefore the resulting decree of that court, purporting to dissolve the marriage between her and her husband, the defendant, is as to her null and void. Necessarily it follows that in legal effect the cohabitation between Mr. MacPherson and his new wife, who has been referred to in the action as “ Eileen ”, constitutes in the State of New York, an adulterous relationship by reason of which the plaintiff is entitled to a decree of divorce. Defendant is required to pay to the plaintiff, as his contribution toward her support, the sum of $20 a week. In view of the fact that by a decision made simultaneously herewith, additional counsel fees have been granted to the plaintiff, no costs of the action are granted to her. Plaintiff’s counsel will submit for signature a proposed judgment approved as to form by the attorney for the defendant. In the absence of such approval, proposed judgment may be submitted upon five days’ written notice.