■ LYNN D. BEUTEL, Appellant, v WILLIAM C. BEUTEL, Respondent. — Order of the Supreme Court, New York County, entered July 11, 1980, affirmed, without costs. In November, 1972, plaintiff and defendant, then both married to others, commenced living together. Some 27 months later, they married each other, both having procured divorces in the interim. They separated prior to June, 1977. On April 10, 1978, effective March 1, 1978, they entered into a separation agreement. In April, 1978, plaintiff commenced an action for divorce which resulted in a judgment entered April 17, 1978. Pursuant to the provisions of the judgment, the separation agreement, although incorporated into the decree by reference, survived the judgment. In March, 1980, plaintiff commenced this action to rescind the separation

agreement on the grounds that its provisions "were and remain unfair, unjust, inequitable and unconscionable". Thereupon, defendant moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars ,1, 5, 7). Special Term granted the motion. We conclude that its judgment must be affirmed. The complaint consists of 12 pages containing 31 paragraphs. Ten and one half of those pages (the first 29 paragraphs) are a litany of the sufferings of a loyal and devoted wife beset by an indifferent, hostile and sometimes violent husband. Not until the twenty-seventh paragraph is there mention of a divorce. The thirtieth paragraph, which sets forth the gravamen of the action, refers to the ongoing negotiations with a view to an "ultimate divorce" and the resultant "final draft of a document outlining the alleged rights and obligations of the parties to each other upon the termination of their marriage". Indeed, it recites a call by the plaintiff's psychiatrist to her attorney urging, for reasons of health, swift completion of the divorce proceedings. It is in this paragraph in which she alleges that the defendant "persisted" in calling her, "haggling" over the details of the settlement and urging her to accede to its terms. Parenthetically, those terms had already been agreed to by her attorney. It is this last claim which furnishes the basis for the claimed inequitable and overreaching conduct and it does not make out a cause of action. We are aware that separation agreements are more closely scrutinized by the courts for fairness and equity than are ordinary business contracts *(Christian v Christian,* 42 NY2d 63). Nonetheless, "Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions" (pp 71-72). More than conclusory words of characterization are necessary to warrant interposition by the court *(Nahlik v Nahlik,* 74 AD2d 709). Here, both parties were represented by most competent counsel. Full and complete disclosure of defendant's financial circumstances was made. For the two-year period during which the separation agreement was in effect*, direct cash payments were made by defendant to plaintiff of $26,598.98. Additionally, the defendant paid the plaintiff's rent which totaled $29,596.56. Furthermore, the furniture in the matrimonial abode, which was turned over to the wife, is said to have cost approximately $35,000. Both of the parties were prominent television personalities. Presumptively, the limited duration of the support provisions was bottomed on the thesis that plaintiff could return to her professional career within the time span during which these support provisions were to be effective, with earnings adequate to support herself. In sum, there is nothing about this separation agreement, when set in the context of a childless 28-month marriage, to warrant the bald conclusory allegations that it is unconscionable or the product of overreaching. Concur — Markewich, Silverman and Bloom, JJ.

Birns, J. P., and Lupiano, J., dissent in a memorandum by Lupiano, J., as follows: This is an action wherein plaintiff, the former wife of defendant, seeks to rescind the separation agreement previously entered into between the parties. The basis for the rescission is the plaintiff's claim .that the agreement was executed by her under duress and in consequence of a weakened psychological state rendering her incapable of a knowing voluntary act

---

* While not controlling in the situation here presented, it is worthy of note that the separation agreement provided that it was to terminate upon the happening of the earliest of the following conditions (1) the death of either party; (2) the remarriage of the wife; and (3) February 29, 1980. Not until the agreement had been *fully* executed, i.e., not until after February 29, 1980, was this action begun.

in so executing the agreement. It is also asserted that apart from duress and any issue of fraud, the agreement is unconscionable when viewed against the circumstances surrounding the parties. After the complaint was served and prior to joinder of issue, the defendant former husband moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 1, 5, 7) and for summary relief under CPLR 3211 (subd [c]). We first direct attention to CPLR 3211 (subd [a], par 7) — complaint fails to state a cause of action. On such a motion the allegations of the complaint are deemed true and given a liberal construction. Paragraphs 29 through 30 of the complaint are the crux of plaintiff's action. In essence, it is asserted that plaintiff was in a weakened physical and psychological state at the time of the divorce proceedings and the negotiation and execution of the separation agreement. It is particularized that plaintiff had voluntarily committed herself to a mental hospital for two weeks and left to attend to her personal affairs, apparently against the advice of her attending psychiatrist. Plaintiff alleges that the defendant personally, and not through his counsel, persisted in contacting her and haggling over the terms of the settlement — all the while urging her to agree to "his terms and conditions." In paragraph 31 it is alleged that the terms of the separation agreement are "unfair, unjust, inequitable and unconscionable" and that "The allowance provided to the plaintiff is grossly inadequate, especially when measured against the financial resources of the defendant." It is reiterated that the plaintiff's health was impaired by defendant's ill treatment to the extent that her "nervous" and "hysterical condition rendered her unable to make wise or prudent judgments regarding her affairs, or to oppose the desires of the defendant." Considering the truth of everything plaintiff has alleged, it is clear that the complaint states a cause of action. Thus, in order to succeed in obtaining dismissal of the complaint, it is necessary for defendant to go behind the face of the pleading in an endeavor to destroy the factual allegations on which it depends. In endeavoring to do this, defendant submits an affidavit by his counsel wherein it is conclusorily asserted that there is not actionable misconduct by defendant or that the agreement was executed under compulsion. It is also shown that the agreement was included in the findings of fact and conclusions of law culminating in the parties' judgment of divorce, and that these papers constitute documentary evidence demonstrating that the issue of the validity of the agreement was before the court in the divorce proceeding (CPLR 3211, subd [a], par 1). It is further shown by defendant's counsel that the separation agreement contains a release provision and that such release bars the instant claim (CPLR 3211, subd [a], par 5). Finally, it is urged that as plaintiff did not repudiate the agreement, but has waited two years to bring the instant suit and has accepted the benefit of the agreement for such period, plaintiff has thereby ratified the agreement, waived her rescission claim and is estopped from urging such claim. With respect to the summary judgment aspect, defendant submits his own affidavit wherein he states that he has abided by the terms of the separation agreement and that it was executed after "extensive negotiations" between counsel. It must be noted at this point that neither defendant nor his counsel specifically repudiate and destroy the factual allegations in the complaint as to plaintiff's mental condition and health at the time of the negotiation of and entry into the agreement. Plaintiff, in opposition, submits her own affidavit in which she represents that she entered a mental hospital in December, 1977; that her deteriorating mental condition was known to the defendant; that defendant, despite such knowledge, continued to harass her over the details of the agreement and urged her to enter into it, and that at

the time of execution of the agreement she "was literally at the defendant's mercy and was incapable of forming a judgment as to the course of action which was in [her] best interest." Plaintiff admitted that defendant had performed pursuant to the agreement, but declared: "it is its basic unfairness and unreasonableness which I contest when the financial stature of the defendant is measured against the duration of our relationship and our unequal bargaining position." In essence, defendant's motion is predicated upon and supported by two vehement arguments, to wit, that the plaintiff's acceptance of the benefits under the separation agreement for two years before commencing this suit and the parties' subsequent divorce decree which incorporated,. but did not merge, the terms of the separation agreement, preclude her from attacking the validity of the agreement. "Separation agreements, which are regular on their face, although voidable, if not otherwise terminated, are binding upon the parties unless and until they are set aside. If such an agreement is voidable, as where it was made under fraud or duress or where it fails to make adequate provision for the support of the wife, it may be set aside under principles of equity in an action in which such relief is sought by the complaint" (16 NY Jur, Domestic Relations, § 715). Defendant's plaint that the subsequent decree of divorce, which incorporated the terms of the separation agreement, conclusively establishes the validity of the agreement as to plaintiff, misperceives the fact that such "rule does not apply where both the decree of divorce and the separation are voidable and are declared void" (16 NY Jur, Domestic Relations, § 718; see *Oppenheimer v Oppenheimer,* 20 Misc 2d 248, mod on other grounds 11 AD2d 1006, affd 11 NY2d 838) and ignores the evolution of the law in the wake of 1966 reforms (the Divorce Reform Law of 1966 [L 1966, ch 254, § 7]) to the effect "that even though individual clauses in a separation agreement were void, the agreement supplied grounds for divorce under subdivision (6) of section 170 of the Domestic Relations Law since such agreements survive for that purpose (see, e.g., *Bruno v Bruno,* 51 AD2d 862, mot for lv to app den 39 NY2d 706; *Seligman v Seligman,* 78 Misc 2d 632, 635; *Hummel v Hummel,* 62 Misc 2d 595, 599; but see *Markowitz v Markowitz,* 77 Misc 2d 586, 589, 592" *(Christian v Christian,* 42 NY2d 63, 69-70). "Separation agreements have assumed a new and greater legal dimension. Not only may they serve as 'evidence of the authenticity and reality of the separation' which is a basis for absolute divorce but, *even though a portion of the agreement,* such as one dealing with the economics or property of the marital parties, *be declared void* because of overreaching in bringing about its execution, the separation agreement still retains vitality as an essential ingredient in such an action for dissolution of the marriage. Because of the law's purpose, to achieve its moral and social goals and to avoid a frustration of those aims, separation agreements must not be permitted to be employed as instruments for the improper exaction in the inducement of execution of unconscionable terms within a frame of inequitable conduct" *(Christian v Christian, supra,* p 73; emphasis supplied). Of critical significance, the "Findings of Fact" relied on by defendant as constituting *res judicata* in the instant independent action (by the plaintiff former wife to rescind the separation agreement) is a *standard form* which, in paragraph 6, merely states: "The parties executed a separation agreement on April 10, 1978, which is annexed. The separation agreement shall be incorporated by reference in the judgment, and shall survive." There is no approval of the separation agreement in the findings of fact or in the divorce decree. The decree merely echoes the findings of fact by stating, again in a prepared form, "The Separation Agreement * * * which is annexed to the Findings of

Fact, shall be incorporated by reference in the Judgment and shall survive." The obligations arising from the contract of separation were not expressly adjudicated or approved in the divorce decree, but were merely "incorporated by reference". (See *Abeles v Abeles,* 197 Misc 913; cf. *Schacht v Schacht,* 295 NY 439, 442, wherein the divorce decree declared that the separation agreement provisions "be, and the same * * * [are] hereby ratified, approved, confirmed and adopted by the Court, and by reference made part of the Court's decree"; to the same effect see *Crane v Crane,* 199 Misc 980, affd 281 App Div 671; *Rudolph v Rudolph,* 66 NYS2d 274; *Hoyt v Hoyt,* 265 App Div 223, mot for lv to app den 290 NY 931; *Fales v Fales,* 160 Misc 799, affd 250 App Div 751.) No merger and no approval respecting the agreement occurred herein in regard to the divorce decree. A public policy issue must be confronted under these circumstances with regard to the question whether a naked incorporation by reference of the separation agreement in the findings of fact and divorce decree with such agreement to survive the decree bars a party from subsequently seeking to have the agreement or a provision thereof set aside as imbued with fraud and duress or unconscionability. If the parties or a party seeks to have the court specifically approve or ratify the terms of the separation agreement, the court is thereby alerted to its responsibility in the exercise of its equity jurisdiction to scan the provisions of the separation agreement for signs of unfairness, unconscionability or overreaching. The mere, or naked, incorporation by reference does not ordinarily serve to alert the court to this delicate task. Further, another important consideration looms in the distinction between a party who seeks a divorce based on a separation agreement, while concomitantly seeking to have the agreement rescinded for duress or unconscionability, and a party who seeks a divorce based on a separation agreement and who, *at a subsequent time,* seeks to have the agreement set aside for the afore-mentioned reasons. Is this a distinction with or without substance when viewed against the Divorce Reform Act of 1966 and the present policy of New York State? My general inclination is to view this as a distinction without substance, at least where the separation agreement is incorporated only by reference and not specifically approved in the divorce proceeding and the agreement survives the decree. "It is not an objection to the maintenance of an action to set aside a separation agreement that the plaintiff does not tender, or offer in her complaint to return, the money which she has received under the agreement" (16 NY Jur, Domestic Relations, § 719; *Hungerford v Hungerford,* 16 NY 550; *Riemer v Riemer,* 48 Misc 2d 873, affd 25 AD2d 956, mot for lv to app dsmd 17 NY2d 915). In *Almonte v Almonte* (259 App Div 311) we held that a defendant is not entitled to judgment dismissing the complaint in an action seeking, *inter alia,* to rescind a separation agreement for fraud and duress on the ground that up to the trial plaintiff continued to accept monthly payments of alimony as provided in the agreement and that she was thereby estopped from maintaining the action to rescind, where it appears that plaintiff asserts that the separation agreement made inadequate provision for her support and was procured by fraud and duress. "However * * * the court will ordinarily require the wife, as a condition for relief, to return what she has received from her husband's estate, other than what she has already expended for her support, so far as it is in her power to make restoration" (16 NY Jur, Domestic Relations, § 719; *Hungerford v Hungerford, supra; Cernak v Cernak,* 12 AD2d 980). In *Christian v Christian (supra),* the Court of Appeals noted that separation agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost good faith.

There is strict surveillance of all transactions between married persons, especially separation agreements. Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract. With these principles in mind, the Court of Appeals noted that the judicial branch of government has thrown a cloak of protection around separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress. Equity sets aside or refuses to enforce those born of and subsisting in inequity. Indeed, to warrant equity's intervention, the court noted that no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to the spouse because of the other's overreaching. The court also noted that a portion of the agreement, such as one dealing with the economics or property of the marital parties, may be set aside as overreaching. The reasoning behind the relaxation of ordinary contract rules is that the obligation of the husband to furnish support springs not only from the agreement, but from the marital relationship and the interest of the State therein *(Haas v Haas,* 298 NY 69). In light of *Oppenheimer, Almonte* and *Christian,* and having due regard for the brevity of the record herein, I conclude that the defendant's motion to dismiss the complaint must be denied. The defendant has clearly failed to overcome the factual assertions of the complaint and the affidavit of plaintiff which clearly raise an issue as to the validity of the separation agreement in its inception. The mental and physical condition of plaintiff at the time of the negotiation and execution of the agreement and the duration of such condition must be explored. Also, the terms of the agreement, viewed against the economic circumstances surrounding the parties appear to raise an aura of unconscionability which must be evaluated. Accordingly, the order of the Supreme Court, New York County, entered July 11, 1980, granting defendant's motion to dismiss the complaint, should be reversed, on the law, and the motion should be denied.